**CYTEMP SPECIALTY STEEL,**
Petitioner,

v.

**WORKERS' COMPENSATION
APPEAL BOARD (SERVEY),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 11, 2002.

Decided Nov. 27, 2002.

Albert S. Lee, Pittsburgh, for petitioner.

Richard T. Ruth, Erie, for respondent.

Before: PELLEGRINI, Judge, LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Cytemp Specialty Steel (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) reversing the decision of the workers' compensation judge (WCJ) which granted Employer's petition for modification of compensation benefits (Modification Petition). We affirm.

On January 27, 1990, Charles Servey (Claimant) sustained a compensable injury while in the course and scope of his employment with Employer. Claimant returned to work without a loss of earning power on July 23, 1990 and his benefits were suspended until August 30, 1993, for a total period of suspension of 161 2/7 weeks. On August 30, 1993, Claimant began suffering a loss of earnings and his partial disability benefits were reinstated.

On July 29, 1998, Employer filed a Modification Petition seeking to clarify whether periods of suspension can be counted towards Claimant's maximum five hundred weeks of partial disability pursuant to Section 306(b) of the Workers' Compensation Act.[1] Claimant filed a responsive answer denying that the period of suspension of July 23, 1990 through August 29, 1993 would count against Claimant's five hundred weeks of partial disability. A hearing before the WCJ then ensued.

At the hearing, the parties entered into a stipulation. The parties stipulated that there is no factual dispute and that the sole issue to be decided is legal, i.e., whether periods of time during which a claimant's workers' compensation benefits are suspended count against the maximum of five hundred weeks of partial disability benefits that are allowed pursuant to Section 306(b) of the Act. The parties stipulated that should Employer prevail in this case, Claimant would have 71 and 4/7th weeks of partial disability benefits remaining as of October 19, 1998; Claimant's entitlement to partial disability benefits would expire as of March 3, 2000. Should Claimant prevail in this case, Claimant would have 232 and 6/7th weeks of partial disability benefits remaining as of October 19, 1998; Claimant's entitlement to partial disability benefits would expire as of March 10, 2003.

The WCJ concluded that periods of suspension are included within the five hundred weeks of partial disability benefits for purposes of determining when partial disability benefits will expire. By order dated September 6, 2000, the WCJ granted Employer's Modification Petition and declared that the five hundred week period for the payment of partial disability benefits to Claimant expired as of March 3, 2000. Claimant appealed to the Board. The Board determined that periods of suspension are not included and reversed. This appeal now follows.[2] The sole issue

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512.

2. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, whether errors of law have been committed, whether there has been a violation of appeal board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compen-*

presented for our review is whether the Board erred in determining that periods of suspension do not count in calculating the five hundred weeks of partial disability provided for under Section 306(b) of the Act.

■ Employer contends that the WCJ properly concluded that periods of suspension count against the maximum of five hundred weeks of partial disability benefits that are allowed pursuant to Section 306(b) of the Act. We disagree.

Relying upon the Supreme Court's decisions in *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994) and *Stewart v. Workers' Compensation Appeal Board (Pennsylvania Glass Sand/US Silica)*, 562 Pa. 401, 756 A.2d 655 (2000), the WCJ herein concluded that periods of suspension are included within the five hundred weeks of partial disability benefits for purposes of determining when partial disability benefits will expire. In *Dillon*, the Supreme Court stated:

> Thus an employee who returns to work at wages equal to or greater than his pre-injury wages, and thus has his compensation suspended, is in the same position after 500 weeks, see 77 P.S. § 512, as an employee who returned to work at reduced wages and thus received compensation for partial disability, i.e., the employer's liability for benefits is terminated.

*Dillon*, 536 Pa. at 504 n. 3, 640 A.2d at 392–93 n. 3. In *Stewart*, the Supreme Court stated "[c]ertainly by implication, the statute also requires that periods of suspension be included within the 500 week calculation for purposes of determining when partial disability benefits have expired." *Stewart*, 562 Pa. at 407, 756 A.2d at 658. While at first blush, these statements, taken out of context, appear to support the WCJ's conclusion, a closer examination of *Dillon* and *Stewart* reveal that the Supreme Court was specifically addressing the statute of repose contained in Section 413 of the Act.

■ Section 413 of the Act, 77 P.S. § 772, imposes a statute of repose whereby a reinstatement petition, for partial disability benefits, must be filed within the period for which partial disability is payable in order to be considered timely filed. Specifically, Section 413 provides, in pertinent part:

> That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award *may be resumed at any time during the period for which compensation for partial disability is payable*, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772 (emphasis added). Section 306(b)(1) of the Act, 77 P.S. § 512(1), provides "[t]his compensation shall be paid during the period of such partial disability ... but for not more than five hundred weeks." The five-hundred week period in which a claimant has to file a petition for reinstatement of benefits begins to run on the date *total* disability benefits are initially suspended. *Cicchiello v. Workers' Compensation Appeal Bd. (Frank L. Markel Corp.)*, 761 A.2d 210, (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 566 Pa. 649, 781 A.2d 148 (2001).

■ In calculating this five hundred week period for the statute of repose, periods of suspension are included with periods where partial disability benefits are paid. *Stewart*, 562 Pa. at 409–410, 756 A.2d at 660 (the primary, direct effect of

*sation Appeal Board (Wolfe)*, 539 Pa. 322, 652    A.2d 797 (1995).

Section 413(a) "includes the requirement that any period of suspension of benefits be included within the 500 weeks of eligibility for resumption of partial disability benefits."); *Cicchiello.* In other words, "the period of limitations is not tolled during the time benefits are suspended." *Cicchiello,* 761 A.2d at 212. Thus, a claimant has five hundred weeks, or 9.6 years from the date of the suspension of his total disability payments to file a petition for reinstatement for the resumption of partial disability benefits. *Cicchiello.*

While periods of suspension are clearly included for purposes of calculating the statute of repose under Section 413(a) of the Act, the issue presently before this Court is whether periods of suspension count against the maximum of five hundred weeks of partial disability benefits payable pursuant to Section 306(b) of the Act. Section 306(b) of the Act clearly provides "[f]or disability partial in character caused by the compensable injury or disease ... such compensation shall not be more than the maximum compensation payable. This compensation shall be paid during the period of partial disability ... but not for more than five hundred weeks." 77 P.S. § 512. There is no language within this section which suggests that the five hundred week maximum of partial disability must be received in a consecutive five hundred week period or only over a five hundred week period. In fact, Section 306(b) of the Act continues that "[s]hould total disability be followed by partial disability, the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability."

■ In *Palmiere v. Workmen's Compensation Appeal Board (East End Truck-*

*ing),* 91 Pa.Cmwlth.137, 496 A.2d 918 (1985), a claimant sought resumption of benefits following the loss of a light duty job, the existence of which had caused the suspension of his payments for over three years. This Court recited that Section 306(b) of the Act provides for payment of up to five hundred weeks of compensation during a period of partial disability. *Palmierre.* We stated that "in computing the period for which compensation for partial disability is payable pursuant to an agreement or award under the Act, periods of suspension when no payments are made because the claimant's earnings equaled or exceed his pre-injury wages are *not* to be included." *Id.,* 496 A.2d at 920 (emphasis added). An employer is not discharged of its obligation to pay partial disability by virtue of the fact ·that the claimant returned to work at no loss of earnings. *See id.*

Additionally, in *D & T Brooks, Inc. v. Workmen's Compensation Appeal Board (Knight),* 38 Pa.Cmwlth.223, 392 A.2d 895 (1978), this. Court held that periods of suspension are not to be included in calculating the maximum number of weeks of partial disability benefits remaining available to a claimant. *D & T. See Goodrich v. Workmen's Compensation Appeal Board (Shenango China),* 165 Pa.Cmwlth.217, 645 A.2d 302 (1994). In *D & T,* the claimant had received 34 1/7 weeks of partial disability benefits at the time his reinstatement petition was filed. *D & T.* Upon determining that the claimant had filed his reinstatement petition within the statutory time for payment, we concluded that an additional 312 6/7 weeks of partial disability benefits remained of the 350 weeks available.[3] *Id.* We stated:

---

3. Before the May 1, 1972 amendment to section 306(b), the maximum compensation payable for partial disability was 350 weeks.

Where, as here, the employer is relieved of the payment of compensation during the course of this period, when the claimant resumes full earning power, albeit with a continuing disability, the period of suspension inures entirely to the benefit of the employer and he should not thus be heard to complain if subsequently within the statutory time for payment, the changed status of the employee's earning power revives his liability.

*D & T*, 392 A.2d at 898.[4]

■ The exclusion of suspension periods in the calculation of partial disability benefits that are allowed pursuant to Section 306(b) of the Act comports with the purposes of the Act. The Act is remedial in nature and its purpose is to benefit the workers of this Commonwealth. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996). The Act is to be liberally construed to effectuate its humanitarian objectives. *Id.* Borderline interpretations of the Act are to be construed in the injured party's favor. *Id.* To construe Section 306(b) otherwise would confer a double benefit upon the employer, i.e. not paying benefits during the period of suspension plus having the suspension period count against its five hundred week partial disability maximum obligation.

■ Thus, provided a claimant's partial disability benefits are reinstated during the five hundred week statute of repose, the claimant can continue to receive any remaining partial disability payments up to a maximum of five hundred weeks even beyond the statutory period. However, in the event that partial disability benefits are suspended in the post statutory period, the claimant would no longer be eligible to have his partial disability benefits reinstated. *Cicchiello.*

Applying this analysis to the case at hand, Claimant, following a period of total disability, returned to work without a loss of earning power on July 23, 1990 and his benefits were suspended until August 30, 1993 for a total suspension period of 161 2/7 weeks. As of August 30, 1993, Claimant began suffering a loss of earnings and his partial disability benefits were reinstated as of that date. There is no dispute that Claimant's reinstatement petition was filed within the five hundred week statutory period of repose. From August 30, 1993 through October 19, 1998, Claimant only exhausted 267 and 1/7 weeks of partial disability benefits. Thus, the Board properly determined Claimant would have 232 and 6/7th weeks of partial disability benefits remaining as of October 19, 1998. Claimant's entitlement to partial disability benefits will expire as of March 10, 2003.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 27th day of November, 2002, the order of the Workers' Compensation Appeal Board, dated May 29, 2002, at No. A00–2507, is affirmed.

---

4. Although this reasoning was applied to the issue of whether the claimant's reinstatement petition was timely; this Court in *Goodrich* tapered the holding in *D & T* by emphasizing that the "statutory period for partial disability does not extend beyond 500 weeks." *Goodrich*, 645 A.2d at 304. As discussed above, the five hundred week statutory period of repose for partial disability is not tolled by periods of suspension.