William **KANE**, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (GLENSHAW GLASS COMPANY), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2007.

Decided Dec. 28, 2007.

Lawrence R. Chaban, Pittsburgh, for petitioner.

Lawrence J. Baldasare, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

William Kane (Claimant) petitions for review from an Order of the Workers' Compensation Appeal Board (Board) that affirmed the Decision of Workers' Compensation Judge (WCJ) Rosalia Parker denying his Reinstatement Petition. We affirm.

Claimant sustained a right shoulder injury in the course and scope of his employment on March 21, 1991. Glenshaw Glass Co. (Employer), through its insurer, Argonaut Insurance Co., acknowledged this injury in a Notice of Compensation Payable (NCP) and described it as an "A/C separation." Claimant received total disability payments pursuant to this document beginning June 11, 1991. Following a short period, Claimant returned to work at his regular duty job.

Claimant sustained a new work-related injury to his left shoulder on December 25, 1995. Employer, self insured as of that date, issued an NCP describing his injury as a "left shoulder strain/sprain." Claimant received total disability for this injury beginning June 18, 1996. He ultimately returned to work, but not to his regular duty job.

On November 24, 2000, Claimant filed a Claim Petition against Employer seeking benefits for a new injury to his right shoulder occurring on June 2, 1999. He also

filed a Reinstatement Petition alleging, in the alternative, a recurrence of his 1991 right shoulder injury. In a Decision dated March 23, 2001, WCJ Linda Tobin determined that Claimant sustained a new injury to his right shoulder on June 2, 1999 due to repetitive motion. She found that he was entitled to total disability benefits from June 3, 1999 through June 10, 1999 and partial disability from June 11, 1999 through August 1, 1999. The WCJ suspended Claimant's benefits for this injury as of August 2, 1999.

Employer filed Termination and Review Petitions in July of 2002 regarding Claimant's 1995 left shoulder injury. These Petitions were dismissed in a May 20, 2003 Order. Claimant remained in modified duty with Employer due to his 1995 left shoulder injury.

Employer ceased operations on November 24, 2004 and, consequently, Claimant's modified job was eliminated. The parties entered into a Supplemental Agreement reinstating Claimant's benefits for his 1995 left shoulder injury effective from the date of the plant closure.

Claimant filed a Reinstatement Petition on January 6, 2006 alleging his 1999 right shoulder injury again caused a decrease in his earning power as of November 25, 2004. He alleged that the modified job he was working was eliminated. He noted "Claimant seeks a Supplemental Agreement reinstating total disability, but with no payment as he is receiving benefits due to another injury with the Defendant."

By a Decision circulated July 31, 2006, WCJ Parker explained that Employer properly reinstated Claimant to total dis-

ability as he was working a modified duty position that was eliminated for economic reasons. She noted Employer's representations that Claimant was working modified duty based on the injury he sustained to his left shoulder and the fact that the parties executed a Supplemental Agreement reinstating Claimant's benefits based on the left shoulder injury. She further stated that Claimant, in seeking to have his benefits reinstated for his 1999 *right* shoulder injury, is actually seeking to have his status for that injury changed to total disability but have his benefits "stayed" as he is already receiving total disability for his 1995 *left* shoulder injury. In so doing, the WCJ reasoned that Claimant hopes to escape the effects of having the weeks he is in suspension status for this 1999 right shoulder injury counted against his allotment of five hundred weeks of partial disability. The WCJ concluded that the Pennsylvania Workers' Compensation Act [1] (Act) does not provide for a "stay" as sought by Claimant. Consequently, she denied his Petition.

Claimant appealed to the Board which affirmed in an Opinion dated May 30, 2007. This appeal followed.[2]

Claimant argues that the WCJ erred in denying his Reinstatement Petition. Specifically, he contends that she should have granted reinstatement and then immediately suspended his benefits until such time that his right to benefits for his 1995 injury changes. He asserts that this matter is controlled by the Supreme Court's Decision in *L.E. Smith Glass Co. v. Workers' Compensation Appeal Board (Clawson)*,[3] 571 Pa. 594, 813 A.2d 634 (2002).

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

2. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.),* 926 A.2d 997 (Pa.Cmwlth. 2007).

The claimant, in *Clawson*, sustained a right wrist injury in 1989. The employer, by its insurer, Amerisure, issued an NCP acknowledging this injury and began payment of indemnity benefits. The claimant returned to his pre-injury job without restrictions on September 4, 1990 and signed a final receipt. In 1991, the claimant sustained a new injury described as a submuscular left ulnar transposition. He began receiving total disability benefits pursuant to an Agreement for Compensation payable by the employer's new insurer, the State Workmen's Insurance Fund. In September of 1993, the claimant filed a reinstatement petition alleging a recurrence of his 1989 right wrist injury as of April 6, 1992. The WCJ granted the claimant's reinstatement petition and found that both his right wrist injury and his left ulnar injury, by themselves, were totally disabling. The WCJ determined that the 1989 injury was the primary cause of Clawson's current disability and, therefore, Amerisure was solely liable for the claimant's benefits. The matter proceeded through the appeals process and ultimately reached our Supreme Court.

The Supreme Court, in *Clawson* held that when two injuries are each, in and of themselves, totally disabling, a claimant may receive benefits for only one injury. When the second injury occurs, the insurer responsible for payment of benefits for the first injury continues to be liable. The claimant's benefits for the second injury should be put in suspension status until his entitlement to benefits for the first injury changes. *Id.* at 605, 813 A.2d at 640.

■■■ At first blush, it appears from a reading of *Clawson* that Claimant is correct and that the WCJ erred in denying his Reinstatement Petition and in not immediately suspending benefits in light of the fact that he was already receiving total disability benefits for his 1995 injury to his left shoulder.[4] The present matter, however, is distinguishable. While the employee in *Clawson* filed a reinstatement petition to set aside a final receipt, Claimant's benefits for his right shoulder injury were already in suspension status at the time he filed his Reinstatement Petition pursuant to WCJ Tobin's 2001 Decision. This distinguishing fact is of utmost significance. Even if the WCJ granted Claimant's Reinstatement Petition in the current litigation, such action would have been a nullity, as his benefits for his right shoulder would have to be immediately suspended. As such, we see no error in the WCJ's denial of Claimant's Petition or in the Board's affirmance of the same.[5]

---

**3.** Claimant, in his brief, and the Board, in its Opinion, incorrectly spell the injured worker's name in the above cited case as "C–L–A–U–S–E–N." The correct spelling, however, is C–L–A–W–S–O–N.

**4.** For the sake of addressing Claimant's argument, we will assume he is totally disabled by each of his injuries in and of themselves for the purposes of applying the principles set forth in *Clawson*.

**5.** Section 306(b)(1) of the Act, 77 P.S. § 512, indicates that partial disability is payable for a period not to exceed five-hundred weeks. In calculating this five-hundred week period for the purpose of gauging the timeliness of a reinstatement petition, periods of suspension are included with periods where partial disability benefits are paid. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Servey)*, 811 A.2d 114 (Pa.Cmwlth.2002). A claimant may not petition for a reinstatement of benefits after the five-hundred week period expires if his benefits were in suspension status. *Stehr v. Workers' Compensation Appeal Board (Alcoa)*, 936 A.2d 570 (Pa.Cmwlth. 2007); *Prosick v. Workers' Compensation Appeal Board (Hershey Chocolate USA)*, 936 A.2d 177 (Pa.Cmwlth.2007). We acknowledge Claimant's brief indicates that he believes that if his reinstatement petition were granted and his benefits were again immediately suspend-

Claimant also argues that the WCJ erred in concluding Employer reasonably contested his Petition and, in turn, by failing to award unreasonable contest attorney's fees. Section 440(a) of the Act, 77 P.S. § 996, provides that if an employer contests liability it will be liable for claimant's costs, including counsel fees, if the matter is resolved in whole or in part in the claimant's favor. Claimant's Reinstatement Petition was denied. Consequently, he has not prevailed in whole or in part. Therefore, pursuant to Section 440(a) of the Act, he is not entitled to attorney's fees.

### ORDER

AND NOW, this 28th day of December, 2007, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

ed, this new suspension would have different legal significance than the one imposed by WCJ Tobin in the 1999 Decision. In effect, he wishes the new suspension to essentially be considered a stay, or otherwise toll the running of the five-hundred weeks to file a reinstatement petition for his right shoulder injury. It is imperative that this new suspension be of a different legal significance because, as explained in *Cytemp*, periods of suspension count towards the five-hundred week allotment. The issue of whether the running of the five-hundred weeks of disability should be tolled when his benefits are suspended due to the fact that he is already receiving total disability benefits for a left shoulder injury is one that should be argued before a WCJ in the event Claimant files a reinstatement petition for the purposes of receiving indemnity benefits for his 1999 right shoulder injury at some future time. We note that Claimant's need to file a reinstatement petition for this purpose may not ever arise. Consequently, it is apparent that Claimant is seeking an advisory opinion concerning his ability to pursue a reinstatement at some point in time after his 9.5 years of partial disability would typically be considered to have expired. We do not address this argument as this Court does not issue advisory opinions. *Coleman v. Workers' Compensation Appeal Board (Indiana Hosp.)*, 577 Pa. 38, 842 A.2d 349 (2004).